UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 18-10513-PSG (KSx) Date: June 22, 2020

Title *Lexington Luminance LLC v. Feit Electric Company, Inc.*

Present: The Honorable: Karen L. Stevenson, United States Magistrate Judge

| Gay Roberson | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs: Attorneys Present for Defendants:

**Proceedings: (IN CHAMBERS) ORDER RE: PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S RESPONSES TO INTERROGATORY NOS. 1, 2, & 12 [DKT No. 95]**

Before the Court for decision is Plaintiff Lexington Luminance LLC's ("Lexington" or "Plaintiff") Motion to Compel Defendant's Responses to Interrogatory Nos. 1, 2, & 12, filed on April 24, 2020 in the joint stipulation format pursuant to Local Rule 37-2 (the "Motion"). (Dkt. No. 95.) On May 15, 2020, the Court deemed the Motion suitable for decision without oral argument and took the matter under submission. (Dkt. No. 111.)

For the reasons outlined below the Motion is GRANTED in part and DENIED in part.

## RELEVANT BACKGROUND

The Court previously provided a detailed summary of the allegations of the operative First Amended Complaint ("FAC") in this patent infringement action matter in its June 12, 2020 Order on Defendant Feit Electric Company's ("Defendant" or "Feit") Motion to Compel. (Dkt. No. 119.)[1] Therefore, the Court assumes the parties are familiar with those allegations and will not repeat them here except as specifically relevant to the instant Motion concerning the Accused Products.

//

//

[1] The instant Motion is the second of five separate motions to compel filed by the parties. (*See* Dkt. Nos. 94, 95, 96, 97, and 116.)

## I. Plaintiff's Allegations About the Forty-Four Accused Products

This lawsuit concerns a single patent, U.S. Patent 6,936,851, B2, entitled "Semiconductor Light-Emitting Device and Method for Manufacturing Same," which, together with an *ex parte* reexamination certificate issued for U.S. Patent No. 6,936,851 C1, is collectively referred to as the "'851 Patent." (FAC ¶¶ 7-8.) The FAC, alleges that the Accused Products "use Light-Emitting Diodes ('LEDs') that infringe one or more claims of the '851 Patent[.]" (FAC at ¶ 14.) Plaintiff further alleges that "[t]he LEDs used in the Accused Products are semiconductor light-emitting devices." (*Id.* at ¶ 16 (emphasis in original)).

The FAC explains that "[t]he LEDs used in the Accused Products contain a substrate" with a "textured district defined on the surface of said substrate comprising a plurality of etched trenches[.]" (*Id.* at 21.) Lexington alleges that "[t]he LEDs used in the Accused Products use a gallium nitride first layer and "[t]he EDX analysis of the first layer [of the substrate] confirms that the first layer used in the LEDs found in one of the Accused Products" is comprised of gallium nitride. (*Id.* at ¶ 24.) The FAC includes a graph reflecting the results of the EDX analysis as exemplary of the properties of the Accused Products generally. (*Id.*) Lexington identifies each of the forty-four Accused Products by SKU number. (*Id.* at ¶¶ 12-14.) Further, the FAC includes detailed photographs and EDX measurements of one of the Accused Products as "exemplary" of the infringing elements of the Accused Products generally. (*Id.* at ¶¶ 15-16.)

Lexington alleges that the Accused Products are not licensed under the '851 Patent and seeks to recover damages sustained as a result of Defendant's infringing conduct. (*Id.* at ¶¶ 30-31.) The FAC also alleges willful infringement. (*Id.* at ¶¶ 32-35.)

## II. Disputed Discovery Requests

Lexington served a First Set of Interrogatories on October 11, 2019 and after Feit objected that those interrogatories exceeded the maximum allowable number of interrogatories. (Joint Stip. at 6-7.) After an informal discovery conference with the parties, the Court concluded that Lexington's First Set of Interrogatories indeed contained impermissible subparts based on the fact that individual interrogatories sought not only information about the Accused Products, but also the identification of witnesses and documents. (*See* Dkt. No. 57.) Thus, on November 21, 2019, Lexington served an Amended First Set of Interrogatories. Feit again objected that the

interrogatories exceed the maximum allowable number of interrogatories. (*Id.* at 7.) At issue in the Motion in particular are the following Interrogatories:

> **Plaintiff's Interrogatory No. 1**
>
> Disclose the manufacturer and manufacturer's part number for the LEDs used in each of the Accused Products. If, and to the extent that you do not track or maintain the requested information regarding the LEDs for an Accused Product, you are requested to provide the manufacturer's part number for the parts or devices containing the LEDs for which such information is tracked, maintained, or is otherwise available.
>
> **Plaintiff's Interrogatory No. 2**
>
> For each of the Accused Products, please state separately, on a monthly basis or the shortest interval for which records are kept, the total quantity sold, the costs (cost of goods sold), and revenues attributable to sales of the Accused Products.
>
> **Plaintiff's Interrogatory No. 12**
>
> For each of the Accused Products, identify all of the other LED Lighting Products that are or were ever offered for sale by You that contain the same LED lighting product (exclusive of product quantities or product packaging) or the same LEDs. If, and to the extent that You do not track or maintain the requested information regarding the LEDs for an Accused Product, You are requested to identify the parts or devices containing the LEDS for which such information is tracked, maintained, or is otherwise available. For greater clarity, if You have sold another product that is the same light bulb as an Accused Product but which uses a different part number because, for example, it was sold through a different product packaging or sold in different quantities (e.g. a package containing one light bulb vs. a package containing four light bulbs), then please identify all such other products. Similarly, if You have sold another product that uses the same LED or LED-containing component as an Accused Product, then please identify all such other products.

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 18-10513-PSG (KSx) Date: June 22, 2020

Title *Lexington Luminance LLC v. Feit Electric Company, Inc.*

**Feit's Objections and Response to Interrogatory Nos 1, 2 and 12**

Feit served objections and responses to the disputed Interrogatories Nos. 1, 2 and12. (Joint Stip. at 10, Ex. 2.) Feit asserted various general objections to the interrogatories on relevance, proportionality, overbreadth, and burden grounds (*Id.* at 10-11.) Because Feit's objections were largely identical for each the three interrogatories at issue, rather than repeat them for each Interrogatory, the Court cites below Feit's summary of its general objections as set out in the Feit's portion of the Joint Stipulation:

> 1. [Feit] objects to Plaintiff's Amended Interrogatories as being in violation of the Court's limit on the number of interrogatories allowed. A conservative count of Plaintiff's Amended Interrogatories shows that Plaintiff served at least forty interrogatories hereby exceeding the limit of thirty-five interrogatories imposed on the parties by this Court.
>
> 3.[2] [Feit] objects to the extent the interrogatories are not relevant to any party's claim or defense and/or are not proportional to the needs of the case. . .[.]
>
> 4. [Feit] objects to the extent the interrogatories seek discovery of information from electronically stored information that is not necessarily accessible because of undue burden or cost.
>
> 5. [Feit] objects to the extent the interrogatories seek information that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

(*Id*. at 10-11.)

Feit's specific objections center on the two issues with respect to each of the disputed Interrogatories: (1) because of the subparts in each Interrogatory, Lexington has

[2] In the Joint Stipulation, Feit appears to have misnumbered its general objections and skipped listing an objection no. 2. (*See* Joint Stip. at 10-11.) Therefore, for clarity, the Court gives the numbers as listed in the Joint Stipulation.

exceeded the maximum allowable number of interrogatories, thus Feit insists it has no obligation to respond to the Interrogatories; and (2) Feit objects that it could not, without undue burden, respond to the interrogatories unless and until Lexington provided the "lot codes" for each of the Accused Products. (*Id*. at 6-7.)

## III. The Motion

### A. Plaintiff's Positions

Lexington, relying heavily on *Safeco of America v. Rawstrom*, 181 F.R.D. 441, 445 (C.D. Cal 1998), argues that its interrogatory subparts should be counted as one Interrogatory because the subparts all "relate to the same topic" and are part of a "common theme." (*Id*. at 12.) On that basis, Lexington maintains that Feit incorrectly counted each of the Interrogatories and Lexington has not exceeded the thirty-five interrogatory limit set by the Court. (*Id*. at 13-15.)

Further, Lexington insists that Feit's general objections are improper boilerplate objections that should be overruled. (*Id*. at 15-16.) Finally, Lexington contends that Feit's conduct warrants sanctions as it is part of a continued pattern of discovery misconduct that Lexington contends includes misrepresentations Feit allegedly made in two other unrelated lawsuits. (*Id*. at 62.) In its "Statement of Additional Facts", Lexington recites purported misrepresentations Feit made in those other infringement lawsuits. (*Id*. at 62-64.)

Lexington refutes Feit's contention that it cannot adequately respond to the Interrogatories unless Lexington provides "lot codes" for each of the Accused Products. Lexington argues that it took the deposition of Feit's supply-side manager and "learned how Defendant stores and manages its sales and supply chain information relevant to the information needed by Lexington. (*Id*. at 7.) Regarding . . . Interrogatory Nos. 1, 2, and 12, Lexington learned that the relevant information is stored in Defendant's 'Navision' ERP system." (*Id*.)

### B. Defendant's Opposition

Feit's primary objection to the disputed Interrogatories is based on the assertion that the interrogatories contain impermissible subparts that exceed the 35 interrogatory limit set by the

Court. Feit argues that "the correct number [of interrogatories] is at least thirty-seven." (*Id.* at 24.) Feit challenges Lexington's reliance on *Safeco* by citing unpublished decisions where courts in the Central District have held that interrogatories seeking information concerning separate accused products or separate patents are counted as separate interrogatories. (*Id.* at 25 (quoting *Stamps.com, Inc v. Endicia, Inc*., No. CV 06-7499-ODW (CTx), 2009 WL 2576371, at *3 (C.D. Cal. My 21, 2009).) Feit contends that Interrogatory No. 1 "asks at least four discrete questions that stand on their own;" No. 2 is comprised of "three separate and discreet questions that stand on their own without reference to each other and thus, should be counted separately," for a total of seven interrogatories; and No. 12 "asks at least two questions." (*Id*. at 26-27, 32.)

In addition, Feit maintains that since the earliest days of the lawsuit, it has insisted on the "need to have Lexington identify the lot code or lot codes of the accused product" in order to respond to Lexington's discovery requests. (Joint Stip. at 9.) Feit states that "now that Lexington has provided the essential information of the lot codes for the Accused Products, [Feit] intends to produce additional documents and to supplement its interrogatory responses once [Feit[ has obtained the information needed to do so." (*Id.* at 21.) Feit, further asserts that "Lexington only recently provided other necessary information—Lexington's infringement contentions —so [Feit] is in the process of collecting information necessary to attempt to supplement its response to Interrogatory No. 2." (*Id*.) Feit goes on to state, "now that Lexington provided the lot codes of the Accused Products (a few weeks ago) Feit Electric can investigate, and is investigating, to attempt to obtain facts that then would be used to supplement Feit Electric's responses to Lexington's Interrogatory Nos. 1, 2, and 12 (and other interrogatories)." (*Id.* at 33.)

## LEGAL STANDARD

Rule 26 permits discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) identifies six factors to be considered when determining if the proportionality requirement has been met, namely, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Relevant information need not be admissible to be discoverable. *Id.*

Federal Rule of Civil Procedure 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3). District courts have broad discretion in controlling discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

When considering a motion to compel, the Court has similarly broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallet,* 296 F.3d at 751). In resolving discovery disputes, the court may exercise its discretion in "determining the relevance of discovery requests, assessing oppressiveness, and weighing those facts in deciding whether discovery should be compelled." *Unilin Beheer B.V. v. NSL Trading Corp,* Case No. CV 14-2210-BRO (SSx), 2015 WL 12698382, at *4 (C.D. Cal. Feb. 27, 2015) (citing *Favale v. Roman Catholic Diocese of Bridgeport,* 235 F.R.D. 553, 558 (D. Conn. 2006) (internal quotation marks omitted)).

## DISCUSSION

### I. The Discovery Sought is Relevant and Proportionate to the Needs of the Case

Rule 33(a)(4) requires that "the ground for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(a)(4). Feit interposed general objections to each of the disputed Interrogatories asserting that the Interrogatories sought information that was not relevant or proportionate, and included electronically stored information that is not reasonably accessible and, therefore, is unduly burdensome to obtain. (*See* Joint Stip. at 10-11; and see Ex. 2.) Lexington challenges these general objections as "boilerplate" and lacking the specificity required under Rule 33(b)(4). (*Id*. at 11.) The Court agrees.

Feit provides little, if any, specificity as to why the information Plaintiff seeks regarding the Accused Products is not relevant or proportionate to the needs of the case. Given the patent infringement claims at issue, the information sought is highly relevant. Interrogatory No. 1 seeks manufacturers' information for the Accused Products; Interrogatory No. 2 seeks information regarding quantities of Accused Products sold, costs of goods sold, and revenues derived from sales of the Accused Products – information directly relevant to alleged damages; and

Interrogatory No. 12 requests information about other LED Lighting Products that Feit sells now or has sold that contain the same LEDs as the Accused Products.

To the extent Lexington's Interrogatories 1, 2, and 12 specifically target information concerning the forty-four (44) Accused Products identified in the FAC, the discovery requests are proportionate to the needs of the case given importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(1).

Finally, other than the assertion that Feit cannot respond to the Interrogatories unless Lexington provides "lot codes" for the Accused Product, Feit provides no information or evidence to quantify any burden the Interrogatories would impose if Feit were required to respond to the interrogatories. Feit argues that Lexington's failure to identify the "lot codes" for the Accused Products had "impeded [Feit's] ability to respond to discovery requests." (Joint Stip. at 4.) Lexington rejects Feit's position that "lot codes" are essential to Feit's ability to identify responsive information, arguing that deposition testimony of Feit's supply manager confirmed that Lexington could readily identify the Accused Products at issue through its "Navision" system without Lexington providing lot codes. (*Id.* at 7 (citing Ex. 5).) Feit argues that Lexington mischaracterizes that deposition testimony. (*Id.* at 60-61.) But even if Feit's assertion is true, Feit concedes that it now *has* the lot codes and represents that it is actively investigating to obtain the facts necessary for Feit to provide further responses. (*Id.* at 33.) Accordingly, any objection to the Interrogatories based on the lack of "lot codes" is now moot.

Accordingly, these general objections are overruled.

## II. Counting Interrogatory Subparts in Patent Litigation

Rule 33 provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." FED. R. CIV. P. 33(a)(1). Here, the Court has ordered that the parties are each permitted thirty-five (35) interrogatories. (Dkt. No. 57.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 18-10513-PSG (KSx) Date: June 22, 2020

Title *Lexington Luminance LLC v. Feit Electric Company, Inc.*

Rule 33 does not define what constitutes "discrete subparts" and, as one court in this Circuit has noted, "[p]atent cases present unique challenges with respect to the application of Rule 33's numerical limit on interrogatories." *Synopsys, Inc. v. Atoptech, Inc*., 319 F.R.D. 293, 294 (N.D. Cal. 2016). Courts have sought to develop a consistent method of identifying when subparts are properly counted as part of a single interrogatory or must be treated as separate and independent interrogatories. The results, however, have not been uniform.

In *Safeco*, the district court concluded that "interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." *Safeco of America v. Rawstrom*, 181 F.R.D. 441, 445 (C.D. Cal. 1998). In addition, subparts that relate to a "common theme" should generally be considered a single interrogatory. *Id*. at 444. But *Safeco's* "common theme" formula does not fully resolve the question.

In *Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co*., Circuit Judge Bryson did a comprehensive analysis of cases that had addressed multi-part interrogatories, and noted that

> When a multi-part interrogatory is challenged as being multiplicitous, the Court must decide what constitutes a "discrete separate subject." Courts have struggled to define that term and apply it when seeking to resolve disputes over whether one party has exceeded the permissible number of interrogatories by including multiple questions in a single interrogatory.

*Erfindergemeinschaft Uropep GbR v. Eli Lilly and Co*., 315 F.R.D. 191, 194 (E.D. Tex. 2016). Judge Bryson observed that the "common theme" test provided little guidance because "[w]hat constitutes a 'common theme' or 'the same general theme' is subject to widely divergent views." *Id*. at 196. He then went on to adopt the "related question" approach, reasoning that

> [w]hile acknowledging that no precise test is available to determine 'discreteness' for the purposes of the Rule 33(a)(1) inquiry, most courts have followed what is sometimes referred to as the 'related question' approach. In an effort to give some specificity to the inquiry, the test applied under the 'related question' approach is generally stated as follows:

> subparts that are logically or factually subsumed within and necessarily related to the primary question' should not be treated as separate interrogatories.

*Id.* at 196 (internal citations omitted). Judge Bryson determined that "ultimately the issues turns on *a case-by-case assessment* of the degree to which the subpart is logically related to the primary question in the interrogatory. *Id.* at 197 (emphasis added).

Other courts have concluded differently, finding that in the patent context "[w]here a case involved multiple accused products, . . . a single interrogatory seeking information about all accused products contains at least as many discrete subparts as there are accused product as issue, and potentially more depending on what information is sought about each accused product." *Synopsys, Inc. v. Atoptech, Inc,* 319 F.R.D. 293, 295 (N.D. Cal. 2016); *and see Stamps.com v. Endicia Inc.,* No. CV 06-7499-ODW (CTx), 2009 WL 2576371, at * 3 (C.D. Cal. May 21, 2009) ("the court does find that interrogatories seeking facts relating to separate patents or separate accused products seek information concerning distinct subjects and, therefore, constitute separate interrogatories.").

In more recent decisions, courts have adopted an approach that is not dependent on the number of accused products or patents-in-suit, but rather examines whether a subpart would require the responding party to rely on separate information. *See Racing Optics, Inc. v. Aeveo Corp*., No. 2-15-cv-1774-RCJ-VCF, 2016 WL 159354, at *1-3 (D. Nev. April 20, 2019); *Synopsys, Inc. v. Atoptech, Inc.*, 319 F.R.D. at 297-98 (N.D. Cal. 2016) ("the court finds that the subparts to Interrogatory No. 2 are 'subsumed within and necessarily related to the primary question.'").

Here, the Court eschews the bright line approach Feit urges, where the number of separate interrogatories is determined strictly by the number of accused products. Instead, in the context of the particular patent infringement allegations at issue in this case, the Court finds more persuasive the "related to" analysis outlined in *Synopsys* and *Racing Optics*. This approach is consistent with the Court's reasoning concerning the parties' initial discovery dispute regarding Feit's numerical objections to Lexington's First Set of Interrogatories, where the Court reasoned

> To the extent the Interrogatories seek facts identifying, for example, the Accused Products, and include subparts seeking further details regarding product part

> numbers and manufacturers of those products, these subparts pertain to the primary question of the interrogatory and can be properly considered part of a single interrogatory

(Dkt. No. 57 at p. 4.) Thus, the Court applies the "related to" principle below in evaluating whether Lexington's Interrogatory Nos. 1, 2, and 12 are single interrogatories or contain impermissible subparts that should be counted as separate interrogatories.

**III. Interrogatory No. 1**

Interrogatory No. 1 asks Feit to identify manufacturer and manufacturer's part number for the LEDs used in the Accused Products. Feit objected to Interrogatory No. 1 based on the assertion that the interrogatory contained "at least four discrete questions that can stand on their own." (Joint Stip. at 27; *see also* Ex. 2.)

Lexington's infringement claims involve a single patent-in-suit, the '851 Patent. (FAC at ¶¶ 7-9, 12-14.) Moreover, the FAC alleges that the Accused Products infringe the '851 Patent in a similar fashion. (FAC at ¶ 14 ("the Accused Products use Light-Emitting Diodes ('LEDs") that infringe one or more claims of the '851 Patent . . .").) Notably, it appears that the similarity of the alleged infringement across all Accused Products is such that Lexington found it sufficient to only include details of one "exemplary Accused Product" in the FAC. (FAC at ¶ 15.) Consequently, the Court finds that the information sought in Interrogatory No. 1 regarding the manufacturer and manufacturers' part numbers for the Accused Products are sufficiently related to a single inquiry as to constitute one Interrogatory. Furthermore, Feit represents that as of March 16, 2020, it has the lot codes of the Accused Products and "Feit is attempting to obtain the information that Lexington seeks." (Joint Stip. at 40.) Feit must promptly complete its search and respond in full to Interrogatory No. 1.

Accordingly, the Motion is GRANTED with respect to Interrogatory No. 1. Feit must to serve complete, verified responses to Interrogatory No. 1 within fourteen (14) days of the date of this Order.

//

//

## IV. Lexington's Interrogatory No. 2

As noted above, Interrogatory No. 2 seeks financial information about the quantities of Accused Products sold, costs of goods sold, and revenues derived from sales of the Accused Products—all information directly related to the alleged infringement damages in this case. The Court has no difficulty finding that Interrogatory No. 2 is a single interrogatory and Feit's objections to providing this basic damages discovery are without merit.

Consequently, the Motion is GRANTED with respect to Interrogatory No. 2. Feit must serve complete, verified responses to Interrogatory No. 2 within fourteen (14) days of the date of this Order.

## V. Lexington's Interrogatory No. 12

Interrogatory No. 12 presents a less straightforward issue. The Interrogatory seeks information regarding products *other than* the Accused Products that may include the allegedly infringing LEDs but describes those products in terms of two different characteristics. The interrogatory also includes a conditional directive in the event Feit does not track the information in the manner that the Interrogatory presumes:

> Interrogatory No. 12
>
> For each of the Accused Products, identify *all of the other LED Lighting Products that are or were ever offered for sale by You that contain the same LED lighting product* (exclusive of product quantities or product packaging) or the same LEDs. If, and to the extent that You do not track or maintain the requested information regarding the LEDs for an Accused Product, You are requested to identify the parts or devices containing the LEDS for which such information is tracked, maintained, or is otherwise available. For greater clarity, if You have sold another product that is the same light bulb as an Accused Product but which *uses a different part number because, for example, it was sold through a different product packaging or sold in different quantities* (e.g. a package containing one light bulb vs. a package containing four light bulbs), then please identify all such other products. Similarly,

if You have sold another product that uses the same LED or LED-containing component as an Accused Product, then please identify all such other products.

(Joint Stip. at 50 (emphasis added).)

Feit argues that Interrogatory No. 12 "asks at least two questions: (1) what other labels or product number have the same light bulbs of each of the Accused Products been sold under; and (2) what other LED Lighting Products sold by [Feit] contain the same LED packages as used in each of the Accused Products." (Joint Stip. at 32.) Lexington, on the other hand, asserts that "Feit has incorrectly counted Interrogatory No. 12 on the purported basis that the Interrogatory has a conditional aspect." (*Id.* at 15.)

Applying the "related to" principle articulated in *Synopsys* and *Racing Optics*, the Court concludes that Interrogatory No. 12 does indeed ask two separate questions that are not necessarily related to a single primary subject. The first question pertains to what, if any, non-accused products use or contain the same LED packages as the Accused Products. The second question seeks information identifying other labels under which any non-Accused products containing the same LEDs as the Accused Products have been sold. These are distinct inquiries that should properly be counted as separate Interrogatories.

Lexington is correct that it is entitled to seek discovery about other "reasonably similar " products. (Joint Stip. at 51.) But even Lexington acknowledges that here, "[s]uch 'other similar products' generally fall into two categories": (1) "products that use the same infringing LEDs" as those in the forty-four products precisely-identified by SKU in Lexington's Complaint;" and (2) Feit products that are "the same as any of the forty-four LED lighting products specifically-identified by SKU but which use a different part number because . . . it was sold through a different sales channel . . or sold with different product packaging or sold in different quantities . . .[.]" (*Id.* at 52.) Lexington's own description of the two categories of information sought in Interrogatory No. 12 supports a finding that these are distinct inquiries.

On that basis, Feit's objection that Interrogatory No. 12 should be separate interrogatories is sustained. Feit need not provide further responses to Interrogatory No. 12 as propounded.

Accordingly, the Motion is DENIED with respect to Interrogatory No. 12, without prejudice to Lexington's ability to seek the information regarding reasonably similar products through different interrogatories, subject to the 35 interrogatory limit.

**VI. Feit Has Not Established that Lexington Exceeded the 35 Interrogatory Limit**

The caption page of the Motion indicates that Plaintiff seeks an order compelling Defendant to respond to Plaintiff's Interrogatory Nos. 1, 2, and 12. (Dkt. No. 95.) However, in the text of the parties' 79-page Joint Stipulation, Feit addresses entirety of Plaintiff's First Set of Interrogatories Nos. 1-12 in order to support its argument that when the subparts are counted as discrete interrogatories, Lexington has served at least forty (40) interrogatories, which exceed the 35 interrogatory limit set by the Court. (*See, e.g.,* Joint Stip. at 11-1, 26-32.) Lexington responds that Feit has incorrectly counted each of the interrogatories in its First Amended Set of Interrogatories. (*Id.* at 11- 15.)

In this Order, the Court only discusses Interrogatory Nos. 1, 2, and 12 as these interrogatories were specifically presented for the Court's adjudication. The Court makes no finding regarding the total number of Interrogatories in Lexington's Amended First Set of Interrogatories. As emphasized above, the analysis of what constitutes discrete subparts to interrogatories in the context of patent litigation is a case-by-case determination. Here, Interrogatory Nos. 1, 2 and 12, together certainly do not exceed 35 interrogatories. Based on the analysis herein, the three interrogatories at most constitute four (4) separate interrogatories. Furthermore, the record before the Court does not indicate that Feit has yet responded fully to any interrogatories, much less to the allowed 35 interrogatories.

The Court declines to undertake a precise computation of the total number of interrogatories served thus far. But applying the "related to" principles discussed above, interrogatories that seek information concerning discrete topics, such as identifying information about the Accused Products or facts supporting specific contentions, including for example, Interrogatory No. 1 (manufacturers and part numbers for LEDs used in the Accused Products); Interrogatory No. 3 (licenses or agreements Feit entered into that involve LED Lighting Products); Interrogatory No. 4 (facts supporting Feit's defenses); Interrogatory No. 6 (facts about "non-infringing alternatives" or "design around(s)"); and Interrogatory No. 9 (information on revenues

and apportionment of profits for smallest unit sales of Accused Products) these are singular interrogatories and as such render Lexington's First Amended Interrogatories well within the Court's 35 interrogatory limit.

Finally, it appears that Feit "doth protest too much" on this point.[3] After strenuously objecting that the interrogatories exceed the Court's limit, Feit then states that it "has not stated it will not respond to Lexington's first set of interrogatories because Lexington exceeded this Court's limit[.]" (*Id.* at 26 (emphasis in original).)

## VII. Lexington's Request for Sanctions

Lexington seeks sanctions against Feit for costs associated in bringing the Motion. (Joint Stip. at 77-78.) Rule 37 provides that when a Motion is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(5)(C). In this instance, although the Court overrules some of Feit's general objections, it also finds that Feit's objections concerning impermissible subparts in the disputed Interrogatories were not substantially unjustified, particularly given the unclarity in the case law about precisely how to count interrogatory subparts in the context of patent litigation. Notably, the Court sustained Feit's objections in that regard with respect to Interrogatory No.12.

More importantly, sanctions are not warranted because much of the rationale behind Lexington's request for sanctions appears to be based on what Lexington characterizes as Feit's "extensive history involving abusive discovery tactics" in other patent lawsuits. (Joint Stip. at 62-64.) Not surprisingly, Feit vigorously disputes Lexington's characterization of Feit's conduct in those other proceedings. (*Id.* at 68.) Feit emphasizes that those prior lawsuits involved "activities of different counsel," Lexington was not involved, and those matters "have no bearing on the issues facing this Court." (*Id.*) The Court agrees. Matters outside this present lawsuit are not before the Court, and the Court will not award sanctions in connection with this Motion based on alleged conduct in other proceedings.

[3] William Shakespeare, *Hamlet,* Act 3, Scene 2, Line 219.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 18-10513-PSG (KSx) Date: June 22, 2020

Title *Lexington Luminance LLC v. Feit Electric Company, Inc.*

Accordingly, Lexington's Request for sanctions against Feit in connection with the Motion is DENIED.

**CONCLUSION**

For the reasons outlined above, the Motion is GRANTED as to Interrogatory Nos. 1 and 2. The Motion is DENIED as to Interrogatory No. 12. Within **fourteen (14) days** of the date of this Order, Feit shall serve complete verified responses to Lexington's Interrogatory Nos. 1 and 2.

The Court DENIES Lexington's request for monetary sanctions against Feit.

**IT IS SO ORDERED.**

:

**Initials of Preparer** gr