UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 18-10513-PSG (KSx) Date: July 8, 2020

Title *Lexington Luminance LLC v. Feit Electric Company, Inc.*

Present: The Honorable: Karen L. Stevenson, United States Magistrate Judge

| Gay Roberson | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|

**Proceedings: (IN CHAMBERS) ORDER RE: PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY [DKT No. 96]**

Before the Court for decision is Plaintiff Lexington Luminance LLC's ("Lexington" or "Plaintiff') Second Motion to Compel Discovery, filed on April 24, 2020 in the Joint Stipulation format ("Joint Stip.") pursuant to Local Rule 37-2 (the "Motion"). (Dkt. No. 96.)[1] On May 15, 2020, the Court deemed the Motion suitable for decision without oral argument and took the matter under submission. (Dkt. No. 111.)

For the reasons outlined below, the Motion is GRANTED.

## RELEVANT BACKGROUND

The Court previously provided a detailed summary of the allegations of the operative First Amended Complaint ("FAC") in this patent infringement action matter in its June 12, 2020 Order on Defendant Feit Electric Company's ("Defendant" or "Feit") Motion to Compel. (Dkt. No.

[1] The parties' Joint Stipulation and related exhibits comprise 688 total pages and were filed on the Court's electronic docket as a single document without any bookmarks to allow quick reference to the related declarations and exhibits. (*See* Dkt. No. 96.) The Court strongly recommends that when the parties submit documents of more than 50 pages as a single file, if numerous exhibits are attached, electronic bookmarks identifying the exhibits and/or declarations greatly assists the Court in its review of the parties' submissions.

119.)[2] Therefore, the Court assumes the parties are familiar with those allegations and will not repeat them.

## I. Disputed Discovery Requests

The Motion presents four discovery issues: (1) Lexington's allegations that Feit failed to produce documents as kept in the ordinary course of business and instead "dumped" a large volume of nonresponsive documents; (2) Feit's failure to produce bills-of-materials and supplier invoices in response to Lexington's RFP No. 4; (3) Feit's conditional responses to document requests and failure to state whether it is withholding documents based on its objections; and (4) deficiencies in Feit's responses to Lexington's Interrogatory Nos. 6, 8, and 10. (Motion at 7-8.) The specific discovery requests at issue and Feit's objections/responses are the following:

**Plaintiff's RFP No. 4**

All Documents constituting or Related to the Bill-of-Materials or supplier invoices for the Accused Products.

**Feit's Objections and Response to RFP No. 4**

Feit Electric repeats its objections set forth in its "Objections to the 'Definitions,'" "Objections to the 'Instructions,'" and "General Objections to the 'Requests for Production,'" above.
Feit Electric specifically repeats its objection that this request asks Feit Electric to produce "all documents" on particular subjects because the proposed discovery is not relevant to any part's claim or defense and/or is proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. See Fed. R. Civ. P. 26(b)(1).

---

[2] The instant Motion is the third of five separate motions to compel filed by the parties. (*See* Dkt. Nos. 94, 95, 96, 97, and 116.)

Feit Electric specifically repeats its objection that this request asks Feit Electric to produce "all documents" on particular subjects because the requested actions impose undue burden and expense on Feit Electric and go beyond the scope of discovery permitted under the Federal Rules of Civil Procedure, the local rules, or the established practices in this District and/or attempt to impose burdens on Feit Electric that are beyond those required under the Federal Rules of Civil Procedure, the local rules, or the established practices in this District. See Fed. R. Civ. P. 26(b)(1).

Feit Electric further objects to this request as unduly burdensome, as seeking information that is not relevant to any party's claim or defense, and as not being proportional to the needs of the case. See Fed. R. Civ. P. 26(b)(1). Plaintiff has identified forty-four (44) Accused Products. Each of Feit Electric products may be made at more than one factory and may be made with LEDs from one or more sources. At least some of the LEDs used in Feit Electric products may not be accused. Furthermore, at least some of these LEDs are not relevant to this case as Plaintiff has licensed the '851 Patent to one or more of Feit Electric's suppliers. Without any further narrowing as to which LEDs are actually Accused Products, this request places an undue burden on Feit Electric that is not justified or relevant to Plaintiff's claims.

Without waiving or limiting any of its objections, Feit Electric states that it will produce non-privileged, non-immune responsive documents that are located after a reasonable search or will list withheld documents in accordance with the Federal Rules of Civil Procedure and the schedule and procedures established by the Court for this action.

**<u>Plaintiff's Interrogatory No. 6</u>**

Separately for each asserted claim of the Patent-in-Suit and each of the Accused Products, please identify and describe all facts (including the technical and financial details) Related to any acceptable non-infringing alternative(s) or design around(s)

available to You, of which You are aware, which You are presently investigating, or which You may rely upon.

**Feit's Objections and Response to Interrogatory No. 6**[3]

**. . . . .**

A requirement that Feit Electric provide a written response in which it "identif[ies] and describe[s] all facts" on the specified topics is inherently oppressive, especially at this stage of the action. Feit Electric will identify such facts of which it is aware at the appropriate time or times as governed by the Federal Rules of Civil Procedure, the local rules, the case schedule set by the Court for this action (which has yet to be entered), and any other relevant orders of the Court. Feit Electric further objects to the extent that Interrogatory No. 6 is premature in seeking discovery that is properly the subject of expert discovery.

Without waiving or limiting any of its objections, Feit Electric responds as follows and might provide a further response once Lexington identifies all the licensees of the asserted patent, once claim construction is complete, and once Lexington identifies all prior art to the asserted patent raised by other parties in connection with litigation, IPRs, reexamination, and/or licensing negotiations. . . . .

**<u>Plaintiff's Interrogatory No. 8</u>**

For each of the Accused Products, please describe in detail all facts Relating to financial information Related to revenues and expenses that are attributable to what you contend is the "smallest saleable unit' and the apportionment of profits between the "smallest saleable unit' and the apportionment of profits between the "smallest saleable units" and the other components of the Accused Products.

[3] Feit interposed lengthy, repetitive objections to Interrogatory Nos. 6, 8, and 10. (*See* Joint Stip. at 41-48.) For the sake of brevity, the Court will not recite the entirety of the identical general objections for each of the three interrogatories, but includes here the portion of Feit's objections and responses stating Feit's primary contention that the discovery is premature expert discovery.

**Feit's Objections and Response to Interrogatory No. 8**

. . . . .

Feit Electric further objects to the extent that Interrogatory No. 8 as premature in seeking discovery that is properly the subject of expert discovery.

Without waiving or limiting its objections, Feit Electric responds as follows and might provide a further response once Lexington identifies the lot numbers of the Accused Products. Once Lexington has reduced the number of interrogatories to be thirty-five or fewer as required by the Court, Feit Electric might provide a further response. At present, because Feit Electric believes that some or all of the answers to this interrogatory "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information)" and that "the burden of deriving or ascertaining the answer will be substantially the same for either party," Feit Electric reserves the right to identify responsive documents and things once those documents and things have been produced in discovery (see Fed. R. Civ. R. 33(d)(1)) or to make responsive documents or things available for inspection by Plaintiff (see Fed. R. Civ. P. 33(d)(2)).

**<u>Plaintiff's Interrogatory No. 10:</u>**

For each of the Accused Products, identify and explain all facts Related to any differences between each Accused Product that You contend is material to the '851 Patent, that You may rely upon to support any assertion or finding of non-infringement, or that You may rely upon to refute any infringement assertion by Plaintiff in this matter. Your answer should include the identification of any differences between the LEDs used in each Accused Product that you contend is material to the '851 Patent and any differences that You contend make it so that any one Accused Product is not representative of any other Accused Product.

//
//
//

**Feit's Objections and Response to Interrogatory No. 10**

**. . . . .**

Feit Electric further objects to Interrogatory No. 10 as vague and ambiguous with respect to "any differences between each Accused Product that You contend is material to the '851 Patent." Plaintiff provides no explanation or gauge as to what Plaintiff considers "material." Moreover, Plaintiff makes this phrase be in reference to "the '851 Patent" rather than to any particular claim or claims which results in the interrogatory being vague and ambiguous as well as overly broad, unduly burdensome, and not relevant to any party's claims or defenses. . . .

Feit Electric further objects to the extent Interrogatory No. 10 as premature in seeking discovery that is properly the subject of expert discovery.

Without waiving or limiting any of its objections, Feit Electric responds as follows and might provide a further response once Lexington identifies the lot numbers of the Accused Products, once claim construction is complete, and once Lexington provides detailed infringement contentions for each and every Accused Product and each and every different LED die and LED package in each Accused Product.

Plaintiff has the burden of proof on its claim of patent infringement. Plaintiff must first identify the patent claims at issue, and then explain and support its claims before Feit has any obligation to respond. To date, Plaintiff only has identified "at least Claim 1" as a claim that Plaintiff contends is infringed. Feit will provide responsive information as required under the Federal Rules of Civil Procedure, the local rules, the case schedule set by the Court for this action (which has yet to be entered), and any other relevant orders of the Court. Feit Electric also states that responsive documents will be produced in accordance with Feit Electric's objections and responses to Plaintiff's First Set of Document Requests. Once Lexington has reduced the number of interrogatories to be thirty-five

> or fewer as required by the Court, Feit Electric might provide a further response. At present, because Feit Electric believes that some or all of the answers to this interrogatory "may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information)" and that "the burden of deriving or ascertaining the answer will be substantially the same for either party," Feit reserves the right to identify responsive documents once those documents have been produced in discovery (see Fed. R. Civ. P. 33(d)(1)) or to make responsive documents available for inspection by Plaintiff (see Fed. R. Civ. P. 33(d)(2)).

## II. The Parties' Positions

### A. Lexington's Arguments

**Issue No. 1: Feit's Production of Non-responsive Documents**

Lexington argues that on December 30, 2019, Feit produced some 7000 documents totaling approximately 27,000 pages, but "the documents were overwhelmingly non-responsive to [Lexington's] requests." (Joint Stip. at 7.) Lexington complains that the production was a "document dump" and while the parties had previously agreed not to include email production, "a large number of Feit-produced documents are emails." (*Id*. at 7, 12.) Lexington further argues that based on its examination of the load file that Feit provided with its documents, many of the documents are unreadable ".dat" and ".tmp" filenames and many of the remaining readable .pdf and/or .xls files "are not responsive to Lexington's requests or to any claims or defenses in the case." (*Id*. at 12.) For example, Lexington describes many of the documents as:

> [G]enerally working documents that deal with day-to-day sales activities including late production of products by vendors, marketing materials for customers, out-of-stock issues involving customers, and production schedules. There are very many planogram ("POG") emails and documents which are basically shelf maps describing where merchandise it to be placed on store shelves.

(*Id.*) Lexington argues that these documents are neither relevant to any claims or defenses nor were they requested in Lexington's document requests. (*Id.* at 13.) Lexington further complains that Feit did not produce the documents, as they are kept in the normal course of business as required by Rule 34(b)(2)(E)(i). (*Id.*) As a result, Lexington contends it cannot determine which documents were produced in response to each request. (*Id.*) Lexington seeks an order requiring Feit to identify by production number which documents it has produced are responsive to which document production request. (*Id.* at 16.)

**Issue No. 2**: **RFP No. 4 re: Bills-of Materials and Supplier Invoices**

Lexington's RFP No. 4 seeks documents concerning bills-of-materials ("BOMs") and supplier invoices for the Accused Products. (*Id.* at 22.) The documents with information regarding Feit's product suppliers and product costs are relevant to Lexington's damages claims (*Id.* at 23-24.) Because Feit does not itself manufacture LED packages for its finished products, when Feit "buys finished lighting devises from contract factories as a 'finished item'" or when Feit buys LED packages from an LED package supplier and consigns them to contact [sic] factories," Feit has BOMs that identify the finished product and the LED(s) used to produce the product. (*Id.* at 23-24.) Lexington seeks information sufficient to "determine (or 'apportion') the value of the LEDs separately from the value of the other components that are used to make Feit's light bulbs." (*Id.* at 24.) Specifically, Lexington seeks "the purchase orders for both the finished light bulbs and the purchase orders for the LEDs." (*Id.*)

According to Lexington, Feit produced 91 BOMs, but "has not produced any purchase orders, either (1) for finished products or (2) for the LEDs that it consigned to its contract factories." (*Id.*) Lexington seeks an order compelling Feit to produce all purchase orders involving the accused products for finished products or for the "LEDs that it consigned to its contract factories." (*Id.* at 26.)

**Issue No. 3: Feit's Boilerplate Objections and Conditional Responses**

Lexington argues that Feit interposed a litany of boilerplate objections to document requests and agreed to produce documents without waiving or limiting any of those objections, in violation of Rule 34(b)(2)(C). (*Id.* at 33.) Lexington seeks an order requiring Feit to provide

supplemental responses indicating whether it is withholding responsive documents based on its objections. (*Id*. at 34.)

**Issue No. 4: Feit's Refusal to Answer Interrogatory Nos. 6, 8, 10**

Lexington propounded interrogatories that seek information concerning non-infringing alternatives or design arounds for each of the Accused Products (Interrogatory No.6); revenues and expenses based on the "smallest saleable unit" for each Accused Product (Interrogatory No. 8); and Feit's assertions regarding non-infringement and material differences among the Accused Products (Interrogatory No. 10). (*Id.* at 43-47.)

According to Lexington, in meet and confer discussions, "Feit unequivocally stated that it would not answer the interrogatories except in its expert report." (*Id*.at 48.) Lexington further notes that Feit responded to the interrogatories with a host of boilerplate objections, including that the discovery imposes undue burden on Feit, it seeks information not relevant to any claim or defense in the lawsuit, it not proportional to the needs of the case, and Lexington "must first identify the patent claims at issue, and then explain and support tis claims before Feit has any obligation to respond." (*Id.* at 43-44.) Feit also objected to the interrogatories as "premature in seeking discovery that is properly the subject of expert discovery." (*Id.* at 45.)

Lexington argues that Feit has failed to demonstrate any undue burden or expense imposed by the discovery. Further, Lexington emphasizes the information sought in Interrogatory No. 6 is highly relevant to the damages inquiry, and Feit's objection that Interrogatory Nos. 8 and 10 call for expert testimony should be overruled because these interrogatories seek facts, not an expert's contentions or opinions. (*Id*.at 50.) With respect to Interrogatory No. 10, Lexington emphasizes that it seeks factual information "directed to identifying any material differences among the accused products that are relevant to infringement," and Feit offers no explanation why the discovery sought is not proportional to the needs of the case. (*Id*. at 51.) Lexington seeks an order compelling Feit to provide complete responses to each interrogatory. (*Id.* at 52.)

//

//

//

//

**B. Feit's Opposition**

**Issue No. 1: Production of Non-responsive Documents**

Feit largely argues that it satisfied its discovery obligations because it searched for documents from the agreed custodians even though "it would not confirm whether those custodians were the correct or only custodians whose documents should be collected." (*Id.* at 17.) Feit claims that "Lexington has not complained about or found fault with Feit Electric's selection of the custodians whose files were collected." (*Id.*) Further, Feit insists it produced documents "from three sources – eight individual document custodians, a shared central server, and its 'ERP' system." (*Id.* at 18.) According to Feit, it searched for documents from agreed sources, based on agreed search terms, and "produced the remaining documents exactly as they found them." (*Id.* at 20.) Feit contends that Lexington "ignores much of the information that is in [the] load file and spreadsheet when Lexington complains that Feit Electric did not produce documents as they were kept in the ordinary course of business. (*Id.*) As for ".dat" and ".tmp" files that Lexington complains were unreadable, Feit responds that "Lexington did not have to try to review any of those files if it did not want to." (*Id.* at 21.)

**Issue No. 2: RFP No. 4 re: Bills-of Materials and Supplier Invoices**

Feit responds that the remedy Lexington seeks, *i.e.*, an order compelling Feit to produce all purchase orders involving either finished products or LEDs consigned to contract factories for the Accused Products, "does not relate to the document request at issue." (*Id.* at 26.) Feit argues that while Lexington asks the Court to compel the production of purchase order, RFP No. 4 specifically seeks BOMs or supplier invoices and "[p]urchase orders are not even mentioned in the request, and purchase orders are not the same thing as invoices." (*Id.*) Feit also emphasizes that RFP No. 4 seeks BOMs or supplier invoices and Feit maintains that it "produced ninety-one bills of materials for all forty-four Accused Products, including bills of materials for different package sizes and package types[.]" Thus, Feit insists, it has properly responded to Lexington's document request." (*Id.*)

//

//

//

**Issue No. 3: Boilerplate Objections and Conditional Responses**

Feit insists that it properly objected to Lexington's discovery requests and cooperated in meet and confer sessions by "explaining objections and discussing possible ways to resolve the parties' disputes." (Joint Stip. at 42.) Feit argues that Lexington "comes to this Court prematurely and without a balanced explanation of the history of discovery in this action[.]" (*Id.*) Further, Feit maintains that Lexington has raised the issue "without substantial justification," and "Feit should be awarded at least a portion of its costs and attorneys' fees in responding to this issue for at least the third time." (*Id.*) Alternatively, Feit urges that if the Court finds in Lexington's favor on this issue, any "order describing what actions should be taken . . . should apply equally to Lexington." (*Id.*)

**Issue No. 4: Refusal to Answer Interrogatory Nos. 6, 8, 10**

Feit argues that it should not be required to answer these interrogatories during fact discovery. (*Id.* at 53-55.) Feit's first argument concerning Interrogatory No. 6, 8, and 10 is that Lexington's complaints "are another example of 'pot/kettle' because Lexington has itself indicated that it cannot fully answer certain of Feit's interrogatories during the fact discovery period." (*Id.* at 52.) Next, Feit argues that it can only respond to the contention interrogatory seeking "all facts" by "obtain[ing] information from its suppliers and engag[ing] an expert to develop an understanding of the technology before it can provide complete information regarding non-infringing alternatives, design-arounds, non-infringement, or apportionment of profits." (*Id.* at 55.) Feit also objected that the interrogatories exceeded the 35 interrogatory limit set by the Court and once Lexington has reduced the total number of interrogatories to 35 or fewer, Feit would then respond. (*See, e.g.*, *id.* at 44, 46, 48.)

Notwithstanding these objections, Feit represents that "now that Lexington has provided information necessary for Feit Electric to respond, Feit Electric can do so if the Court determines that the interrogatories at issue are proper during fact discovery instead of being deferred until expert discovery." (*Id.*) Finally, Feit requests that if "the Court grants Lexington's request, Feit Electric requests that the remedial action(s) apply equally to Lexington." (*Id.* at 56.)

//

//

## LEGAL STANDARD

Rule 26 permits discovery concerning any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). Rule 26(b)(1) identifies six factors to be considered when determining if the proportionality requirement has been met, namely, the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Relevant information need not be admissible to be discoverable. *Id.*

Federal Rule of Civil Procedure 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3). District courts have broad discretion in controlling discovery. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

When considering a motion to compel, the Court has similarly broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett*, 296 F.3d at 751). In resolving discovery disputes, the court may exercise its discretion in "determining the relevance of discovery requests, assessing oppressiveness, and weighing those facts in deciding whether discovery should be compelled." *Unilin Beheer B.V. v. NSL Trading Corp*, Case No. CV 14-2210-BRO (SSx), 2015 WL 12698382, at *4 (C.D. Cal. Feb. 27, 2015) (citing *Favale v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 558 (D. Conn. 2006) (internal quotation marks omitted)).

## DISCUSSION

### Issue No. 1: Non-responsive Documents and "Shuffled" Production

Rule 34(b)(2)(E)(i) requires that, unless otherwise stipulated or ordered by the court, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i); *see also City of Colton*, 277 F.R.D. 583, 585, (C.D. Cal 2011) ("[I]t is clear that parties are entitled

under the Federal Rules to rationally organized productions so that they may readily identify documents, including ESI, that are responsive to their production requests.")

Here, Lexington complains that Feit produced thousands of pages of non-responsive documents, numerous documents that are unreadable, and that the documents have not been produced as kept in the ordinary course of business because the documents appear to "have been shuffled into no discernible order." (Joint Stip. at 13.) As examples of the disorganized nature of the production, Lexington notes that "[m]arketing materials are intermixed with emails, which are intermixed with unrelated spreadsheets, which are, in turn mixed with unreadable 'junk' files in '.tmp' formats." (*Id.*)

Feit's response to the alleged deficiencies is to insist that its document production is proper because Feit searched the agreed custodians, searched for documents based on the parties' agreed search terms, and used a third party e-discovery vendor to assist in the collection process. (*Id.* at 16-18.) Further, Feit maintains that the fact that Feit "provided a 'load file' along with Feit's initial document production from which Lexington created a spreadsheet providing information for each document" somehow refutes "Lexington's wild assertion" that documents were shuffled into an undiscernible order. (*Id.* at 20.) Regarding the unreadable ".dat" and ".tmp" files in its production, Feit responds flippantly, "Lexington did not have to try to review any of those files if it did not want to." (*Id*. at 21.) All of Feit's arguments are without merit.

As a threshold issue, Feit contends that it "does not believe that *City of Colton*," the authority Lexington relied upon, is "controlling law." (*Id.* at 20.) Feit is wrong. *City of Colton*, a published decision from this district, specifically addressed the requirements of Rule 34(b)(2)(E)(i) and held those requirements are fully applicable to ESI. *See City of Colton*, 277 F.R.D. at 583-84. Notably, in *City of Colton*, the court carefully examined the published notes of the advisory committee regarding Rule 34(b) and surveyed decisions from several jurisdictions to conclude:

> [T]here is a broad consensus among courts that have directly considered this use that the requirements set forth in Rule 34(b)(2)(E)(i) regarding the *organization of discovery productions* apply to productions of both traditional hard copy documents and ESI.

*Id.* at 584 (emphasis added). In reaching that conclusion, the Magistrate Judge in *City of Colton* reasoned that interpreting the Federal Rules to require productions "be organized in such a way as to facilitate, not hinder, the usefulness of the information produced also makes commons sense." *Id*. at 584. Indeed, as one court emphasized, "Rule 34(b)(2)(E)(i) is meant to prevent a party from obscuring the significance of documents by giving some structure to the production." *Consolidated Rail Corp. v. Grant Trunk W. R.R. Co*., 2009 WL 5151745, at *3 (E.D. Mich. Dec. 18, 2009).

Furthermore, Feit's objection that its production is sufficient merely because it searched the agreed custodians and used the agreed search terms misses the point. Regardless of where it collects documents and from whom, it is Feit's obligation to assure that it is producing document responsive to the particular discovery requests. Feit's objections seem to suggest that Feit did not conduct the necessary review for responsiveness but simply rested on the custodians, search terms, and collection assistance of its e-discovery vendor. (*See* Joint Stip. at 19-20.) This is wholly insufficient. As courts in this district have emphasized "[t]he rule allowing for production in the ordinary course of business presupposes that there be some sort of organization that will be maintained throughout the production." *Skyhawke Techs., LLC v. Deca Int'l Corp.* Cas No. CV 18-1234-GW (PLAx), 2019 WL 1976473, at *3 (C.D. Cal. Mar. 21, 2019).

On the record presented here, there appears to be no organization of the Feit documents sufficient to indicate how those documents were maintained in the ordinary course of business. On that basis, Feit's production does not comply with the requirements of Rule 34(b)(2)(E)(i).

Accordingly, Feit's objections are overruled and the Motion is GRANTED as to Issue No. 1. Within **fourteen (14) days** of the date of this Order, Feit is directed to label its previous document production and any future productions to correspond with the specific request to which the documents are responsive. To the extent Feit contends that the unreadable ".dat" and ".tmp" files are indeed responsive to Lexington's requests, Feit must re-produce those documents in a readable format and identify to which document requests the documents are responsive.

//

//

//

//

**Issue No. 2: RFP No. 4 re: Bills-of -Materials and Supplier Invoices**

Despite Feit's objections to the contrary, the information sought in Lexington's RFP No. 4 concerning BOMs and/or supplier invoices for the Accused Products is directly relevant to Lexington's damages claims and is proportionate to the needs of the case. As Lexington describes it, the BOMs "would identify the finished product and the LED(s) used to produce the product." (Joint Stip. at 23.) Deposition testimony of Feit's representative confirmed that when Feit buys a product as a finished item, it does not have a BOM for that item. (*Id.* (citing Ex. 20, Shafer Tr. at 51:18-21).) Thus, where no BOM is available, Lexington seeks supplier invoices as a means to identify the component cost of the LED package for a particular Accused Product.

Feit argues that responding to the request for "all documents" on the subject imposes "undue burden and expense on Feit." (Joint Stip. at 22.) But Feit makes no showing of any burden or expense that would be involved in responding to the request. Feit acknowledges that it has already produced 91 BOMs. (*Id.* at 26.) Furthermore, Feit's corporate representative testified that while BOMs are not generally printed, they can be printed and it takes just "a couple of minutes." (Declaration of Michael B. Eisenberg in Support of Plaintiff's *Ex Parte* Application ¶ 7, Ex.5 at p. 24:16-20; 25:2-4.)

Feit also objects that RFP No. 4 specifically seeks either BOMs or "supplier invoices of the Accused Products," but does not ask for "purchase orders." (Joint Stip. at 26.) Feit argues that "[p]urchase orders are not even mentioned in the request, and purchase orders are not the same thing as invoices." (*Id.*) But even if Feit is correct, it nevertheless states that it "continues to be willing to investigate whether Feit Electric can collect and produce invoices that Feit Electric received from suppliers of (1) complete lighting products that are Accused Products or (2) LED packages that Feit Electric sells or consigns to its contract factories." (*Id.* at 27.) Based on that representation, it is clear that Feit recognizes the relevance of what it must produce in response to the RFP; therefore, it cannot evade its discovery obligations based on its "purchase order" argument because it clearly knows that invoices are called for and represents it can collect and produce the relevant, responsive invoices. If it has not such invoices in its possession, custody or control, then Feit must produce supplemental written responses that so indicate.

//

//

Accordingly, Feit's objections are overruled and the Motion is GRANTED as to RFP No. 4. Within **fourteen (14) days** of the date of this Order, Feit must, consistent with its representation in the Joint Stipulation, complete its production of any and all invoices that Feit Electric received from suppliers of (1) complete lighting products that are Accused Products or (2) LED packages that Feit Electric sells or consigns to its contract factories and provide supplemental written response to RFP No. 4 to state as much.

**Issue No. 3: Boilerplate Objections and Conditional Responses**

Rule 34 requires that "an objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C). Lexington complains that for 44 of Lexington's 50 RFPs, Feit responded with a litany of boilerplate objections and conditional responses that do not comply with Rule 34. (Joint Stip. at 33-34.) Lexington notes that Feit repeatedly objected that Lexington's RFPs impose "undue burden" and are "over broad" but Feit fails to provide any specific explanation of the burden or how a particular request is overbroad. (*Id.* at 34-35.) Lexington seeks an order compelling Feit to provide supplemental responses that comply with Rule 34 and an order overruling any of Feit's boilerplate objections that are unsupported. (*Id.* at 35.)

In response, Feit's primary argument is that its deficient responses should be overlooked because this is a "pot/kettle" problem insofar as Lexington interposed similar objections and gave "almost identical equivocal response to [Feit's] RFP No. 39." (*Id.* at 37.) Indeed, Feit spends three pages discussing Lexington's "similar generalized objections" to Feit's discovery requests. (*Id.* at 38-40.) This argument fails. "A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent. Nor may a party condition its compliance with its discovery obligations on receiving discovery from its opponent." *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 653 (N.D. Cal. 2004). Furthermore, courts in this district have found that equivocal responses, such as Feit's, that include the phrases "subject to" and "without waiving its objections," can be confusing or misleading "as to whether the responding party has fully or only partially responded to the discovery request." *Woodard v. Labrada*, Case No. EDCV 16-189-JGB (SPx), 2017 WL 1018306, at * 4 (C.D. Cal. Mar. 6, 2017).
//

Finally, Feit contends that Lexington has persisted in "rais[ing] this issue without substantial justification" and insists that Feit should be awarded "at least a portion of its costs and attorneys' fees in responding to this issue for at least the third time." (Joint Stip. at 42.) The Court disagrees. Contrary to Feit's assertions, the Court finds that Lexington's persistence in raising the issue was a direct result of Feit's recalcitrance, equivocation, and obfuscation in attempting to circumvent the express requirements of Rule 34.

Accordingly, the Motion is GRANTED as to Issue No. 3 insofar as Feit must provide supplemental responses that comply with Rule 34. Within **fourteen (14) days** of the date of this Order, Feit must serve supplemental responses to all 50 of Lexington's RFPs that fully comply with Rule 34(b)(2)(C) by stating any objections with specificity and stating without equivocation whether Feit is withholding documents on the basis of those objections.

**Issue No. 4: Interrogatory Nos. 6, 8, and 10**

Rule 33 governs interrogatories and provides that "[a]n interrogatory may relate to *any matter that may be inquired into under Rule 26(b)(1)*. An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact[.]" FED. R. CIV. P. 33(a)(2)(emphasis added).

Lexington's Interrogatory Nos. 6, 8, and 10 seek factual information relevant to Feit's defenses of non-infringing alternatives or design arounds (No. 6); revenues and expenses based on the "smallest saleable unit" (No. 8); and facts supporting any assertion of non-infringement for each Accused Product (No. 10.) This information is relevant to the infringement claims and defenses at issue in the case and proportionate to the needs of the case given the importance of the issues at stake, the amount in controversy, and Feit's relative access to the relevant information about its own products. FED. R. CIV. P. 26(b)(1).

Feit refused to answer these interrogatories on the ground that they each prematurely seek expert discovery. (Joint Stip. at 42-48.) At the same time, Feit attempts to "hedge its bet" by providing conditional responses indicating that it "*might* provide a further response" to the interrogatories at a later date if and when Lexington provides certain information about its claims. In response to Interrogatory No. 6, for example, Feit states it "*might provide* a further response

once Lexington identifies all the licensees of the asserted patent, once claim construction is complete, and once Lexington identifies all prior art to the asserted patent raised by other parties." (*Id.* at 43-44 (emphasis added).) In response to Interrogatory No. 8, Feit similarly responds that it "*might provide* a further response once Lexington identifies the lot numbers of the Accused Products." (*Id.* at 46 (emphasis added).) In response to Interrogatory No. 10, Feit states that it "*might provide* a further response once Lexington identifies the lot numbers of the Accused Products, once claim construction is complete, and once Lexington provides detailed infringement contentions for each and every Accused Product and each and every LED die and LED package in each Accused Product." (*Id.* at 47 (emphasis added).)

Interrogatory Nos. 6, 8, and 10 are "contention interrogatories." *See San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co*., 2017 WL 3877732, at *2 (S.D. Cal. Sept. 5, 2017) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."). To the extent these interrogatories seek factual information, even though an expert may later rely upon those facts in formulating an expert opinion, the discovery of facts central to Feit's infringement defense(s) is not premature expert discovery. *See Aristocrat Techs. v. Int'l Game Tech.,* 2009 WL 3573327, at *2 (N.D. Cal. Oct. 30, 2009) (granting motion to compel response interrogatory in patent infringement action that requested "all facts" concerning damages and lost profits attributable to the alleged infringement). In *Aristocrat Technologies*, as here, the responding party objected that it could not respond to the interrogatory without a report from its expert. *Id.* The court emphasized that the "plain wording of the interrogatory requested only "facts, information and beliefs, in [Aristocrat's] possession." *Id.* *Aristocrat Technologies* is persuasive here, where Lexington similarly seeks *facts* supporting certain potential defenses to the infringement claims alleged in the case and Feit claims it can only respond based on an expert's report. Not so. Feit's objections to Interrogatory Nos. 6, 8, and 10 as "premature expert discovery" are, therefore, overruled.

Feit also asserts its "pot/kettle" argument that Lexington "itself has identified the expert discovery period as a reason or not fully answering [Feit's] interrogatories during the fact discovery period[.]" (Joint Stip. at 52.) For the reasons noted above with respect to Issue No 3, this argument is just as unavailing with respect to Feit's failure to respond to Interrogatory Nos. 6, 8, and 10 as it was with respect to Feit's boilerplate objections to Lexington's RFPs.

//

Feit also objects that it cannot respond fully to Interrogatory No. 10 without receiving the "lot codes" from Lexington. (Joint Stip. at 47.) But in connection with an earlier motion compel, Feit acknowledged that it now has the lot codes that it claims are necessary in order to respond to Interrogatory No. 8 (*See* Dkt. No. 95 at 33; and Dkt. No. 123 at 8 ("[A]ny objection to the Interrogatories based on the lack of 'lot codes' is now moot.").) Finally, Feit insists it will only respond to the Interrogatories when Lexington reduced the total number of interrogatories to 35 or fewer. (*See, e.g.*, Joint Stip. at 44, 46, 48.) In an earlier motion to compel, the Court declined " to undertake a precise computation of the total number of interrogatories served thus far," but ruled that Feit had not established that Lexington exceeded the 35 Interrogatory limit. (*See* Dkt. No. 123 at 14.) In connection with the instant Motion, Feit presents no argument or evidence that Lexington has exceeded the 35 interrogatory limit. Consequently, this objection is overruled.

Lexington emphasizes that it has attempted without success to resolve this discovery dispute since January 2020. (Joint Stip. at 48.) Feit has an obligation to respond fully to Interrogatories No. 6, 8, and 10 based on the information in its possession, custody and control right now. If that information changes after claim construction proceedings or based on information subsequently obtained based on Lexington's infringement contentions, then Feit has an affirmative duty to supplement its responses. FED. R. CIV. P. 26(e)(1)(A) (stating that a party must supplement its discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process"); *see also Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 933 (N.D. Cal. 2013) (noting "[f]ailure to supplement triggers the sanctions provisions of Rule 37(c)"). Here, Feit's conditional responses to the interrogatories are wholly deficient.

Accordingly, Feit's boilerplate objections based on relevance, proportionality, undue burden, and any need for "lot codes" are overruled and the Motion is GRANTED as to Interrogatory Nos. 6, 8, and 10. Within **fourteen (14) days** of the date of this Order, Feit must serve verified supplemental responses to Interrogatory Nos. 6, 8, and 10 that fully comply with Rule 33 and respond to the interrogatories based on the information presently available to Feit.

//

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 18-10513-PSG (KSx) Date: July 8, 2020

Title *Lexington Luminance LLC v. Feit Electric Company, Inc.*

## I. Lexington's Request for Sanctions

Lexington seeks sanctions against Feit for reasonable fees associated in bringing the Motion. (Joint Stip. at 57.) Rule 37 provides that when a motion to compel is granted in its entirety, the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the court finds that the opposing party's action was substantially justified or other circumstances make an award of expenses unjust. FED. R. CIV. P. 37(a)(5)(A).

Here, the Court finds that Feit's conduct necessitating the instant Motion was not substantially justified. Feit's evasive and prolix objections and responses to Lexington's RFP No. 4, Interrogatory Nos. 6, 8, and 10, and its near wholesale failure to comply with Rule 34's requirement that it state its objections with specificity appear to have served no purpose other than to delay essential discovery in this action.

Accordingly, Lexington's Request for sanctions against Feit in connection with the Motion is GRANTED. Feit's request for "at least a portion of its costs and attorneys' fees in responding to Issue No. 3 concerning its conditional responses to Lexington's RFPs, is DENIED.

## CONCLUSION

For the reasons outlined above, the Motion is GRANTED in its entirety. Within **fourteen (14) days** of the date of this Order, Feit shall:

(1) Issue No. 1: label its previous document production and any future productions to correspond with the specific request to which the documents are responsive. To the extent Feit contends that the unreadable ".dat" and ".tmp" files are indeed responsive to Lexington's requests, Feit must re-produce those documents in a readable format and identify to which documents requests the documents are responsive.

(2) Issue No. 2: complete its production of any and all invoices that Feit Electric received from suppliers of (1) complete lighting products that are Accused Products or (2) LED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 18-10513-PSG (KSx) Date: July 8, 2020

Title *Lexington Luminance LLC v. Feit Electric Company, Inc.*

packages that Feit Electric sells or consigns to its contract factories and provide a supplemental written response to RFP No. 4 reflecting the same.

(3) Issue No. 3: serve supplemental responses to all fifty of Lexington's RFPs that fully comply with Rule 34(b)(2)(C) by stating any objections with specificity and stating without equivocation whether Feit is withholding documents on the basis of those objections.

(4) Issue No. 4: serve verified supplemental responses to Lexington's interrogatory Nos. 6, 8, and 10 that fully comply with Rule 33 and respond to the interrogatories based on the information presently available to Feit.

Further, pursuant to Rule 37(C)(5)(A), Lexington may bring a regularly noticed motion for its reasonable expenses, incurred in bringing the Motion, including attorney's fees, and set the motion for hearing according to the Court's regular hearing schedule.

.

**IT IS SO ORDERED.**

:

**Initials of Preparer** gr